UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL YASSAY,<br><br>       Plaintiff,<br><br>   -against-<br><br>STRONGBRIDGE BIOPHARMA PLC, GARHENG KONG, DAVID GILL, JOHN H. JOHNSON, JEFFREY W. SHERMAN, MÅRTEN STEEN, and HILDE H. STEINEGER,<br><br>       Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Michael Yassay ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Strongbridge Biopharma plc ("Strongbridge" or the "Company") and the members of Strongbridge's board of directors (the "Board" or the "Individual Defendants" and together with Strongbridge, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition of Strongbridge by Xeris Pharmaceuticals ("Xeris") (the "Proposed Transaction"). Upon consummation of the Proposed Transaction, the business of Xeris and Strongbridge will be combined under a new entity to be called Xeris Biopharma Holdings, Inc. ("Xeris Biopharma Holdings").

2. On May 24, 2021, the parties entered into a transaction agreement (the "Transaction

Agreement"), pursuant to which Strongbridge shareholders will receive a fixed exchange ratio of 0.7840 shares of Xeris Biopharma Holdings common stock for each Strongbridge ordinary share they own (the "Transaction Consideration").  Based on the closing price of Xeris common stock on May 21, 2021, this represents approximately $2.72 per Strongbridge ordinary share and a 12.9% premium to the closing price of Strongbridge ordinary shares on May 21, 2021.

3.     On July 28, 2021, in order to solicit Strongbridge shareholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement").

4.     In particular, the Registration Statement contains materially incomplete and misleading information concerning: (i) financial projections for Strongbridge and Xeris, and (ii) the valuation analyses performed by Strongbridge's financial advisor, MTS Health Partners, LP ("MTS").

5.     The special meeting of Strongbridge shareholders to vote on the Proposed Transaction is set for September 8, 2021 (the "Shareholder Vote").  It is imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the Shareholder Vote so Plaintiff can make an informed decision on the Proposed Transaction and properly exercise his corporate suffrage rights.

6.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction until the material information discussed herein is disclosed to Strongbridge's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction over this action pursuant to Section 27 of the

Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff

alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8.      Personal jurisdiction exists over each Defendant either because the Defendant

conducts business in or maintains operations in this District, or is an individual who is either

present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction over the Defendants by this Court permissible

under traditional notions of fair play and substantial justice. "Where a federal statute such as

Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes

whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r

Prot. Corp. v. Vigman* 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum

contacts with the United States, Section 27 of the Act confers personal jurisdiction over the

defendant in any federal district court." *Id.* At 1316.

9.      Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C.

§ 1391, because Defendants are found or are inhabitants or transact business in this District.

Indeed, Strongbridge's common stock trades on The Nasdaq Stock Market, which is headquartered

in this District rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347

F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

10.     Plaintiff is, and at all relevant times has been, a shareholder of Strongbridge.

11.     Defendant Strongbridge is a corporation incorporated under the laws of Ireland with

its principal executive offices located at 900 Northbrook Drive, Suite 200, Trevose, Pennsylvania

19053. Strongbridge's common stock trades on The Nasdaq Stock Market under the ticker symbol "SBBP."

12.     Individual Defendant Garheng Kong is, and has been at all relevant times, a director and the Chairman of the Board of Strongbridge.

13.     Individual Defendant David Gill is, and has been at all relevant times, a director of Strongbridge.

14.     Individual Defendant John H. Johnson is, and has been at all relevant times, a director and the Chief Executive officer of Strongbridge.

15.     Individual Defendant Jeffrey W. Sherman is, and has been at all relevant times, a director of Strongbridge.

16.     Individual Defendant Mårten Steen is, and has been at all relevant times, a director of Strongbridge.

17.     Individual Defendant Hilde H. Steineger is, and has been at all relevant times, a director of Strongbridge.

18.     The Individual Defendants referred to in ¶¶ 12-17 are collectively referred to herein as the "Individual Defendants" and with Strongbridge they are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### I.     Background and the Proposed Transaction

19.     Strongbridge is a global commercial-stage biopharmaceutical company focused on the development and commercialization of therapies for rare diseases with significant unmet needs. Strongbridge was founded in 1996 and was incorporated under the laws of Ireland in 2015.

20.     Xeris Pharmaceuticals is a specialty pharmaceutical company delivering innovative

solutions to simply the experience of administering important therapies that people rely on every

day around the world.  Xeris was founded and incorporated under the laws of the State of Delaware

in 2005.  Xeris is listed on The Nasdaq Stock Market under the ticker symbol "XERS."  Xeris'

principal executive offices are located at 180 N. LaSalle Street, Suite 1600, Chicago, Illinois

60601.

      21.    On May 24, 2021, Strongbridge issued a press release announcing the Proposed

Transaction, which states in relevant part:

### Xeris Pharmaceuticals, Inc. to Acquire Strongbridge Biopharma plc in Stock and CVR Transaction, Creating an Innovative leader in Endocrinology and Rare Diseases

*Transaction Creates Fast-Growing Biopharmaceutical Company with Two Commercial Assets and Robust Clinical Pipeline with Multiple Near-term Inflection Points*

*Diversifies Revenue Base with Two Rapidly Growing Brands in Xeris' Gvoke® and Strongbridge's KEVEYIS®*

*Strongbridge's NDA for RECORLEV® Recently Accepted for Review by FDA; PDUFA Target Action Date Set for January 1, 2022 with Potential Launch in Q1 2022*

*Enhanced Commercial and Operational Platform with Synergies of Approximately $50 Million Expected by the End of 2022*

*Upon Closing of Transaction, Xeris Shareholders to Own ~60% and Strongbridge Shareholders to Own ~40% of Combined Company; Potential for Strongbridge Shareholders to Receive up to $1.00 Per Share in Contingent Value Rights (CVRs)*

*Xeris and Strongbridge to Host Conference Call Today at 8:30 AM ET*

May 24, 2021 07:00 AM Eastern Daylight Time CHICAGO & DUBLIN & TREVOSE, Pa.--(BUSINESS WIRE)--Xeris Pharmaceuticals, Inc. ("Xeris") (Nasdaq: XERS), a pharmaceutical company leveraging its novel formulation technology platforms to develop and commercialize ready-to-use injectable drug formulations, and Strongbridge Biopharma plc ("Strongbridge") (Nasdaq: SBBP), a global commercial-stage biopharmaceutical company focused on the development and commercialization of therapies for rare diseases with significant

unmet needs, today announced that they have entered into a definitive agreement under which Xeris will acquire Strongbridge for stock and contingent value rights ("CVRs"). The agreement, including the maximum aggregate amount payable under the CVRs, values Strongbridge at approximately $267 million based on the closing price of Xeris common stock of $3.47 on May 21, 2021 and Strongbridge's fully diluted share capital. The transaction, which has been unanimously approved by the boards of directors of both companies, with the exception of Jeffrey W. Sherman, M.D., a director in common to both companies, who abstained from the voting, is expected to close early in the fourth quarter of 2021, subject to the satisfaction of closing conditions. Upon close of the transaction, the businesses of Xeris and Strongbridge will be combined under a new entity to be called Xeris Biopharma Holdings, Inc. ("Xeris Biopharma Holdings").

Under the terms of the agreement at closing, Strongbridge shareholders will receive a fixed exchange ratio of 0.7840 shares of Xeris Biopharma Holdings common stock for each Strongbridge ordinary share they own. Based on the closing price of Xeris common stock on May 21, 2021, this represents approximately $2.72 per Strongbridge ordinary share and a 12.9% premium to the closing price of Strongbridge ordinary shares on May 21, 2021. Strongbridge shareholders will also receive 1 non-tradeable CVR for each Strongbridge ordinary share they own, worth up to an additional $1.00 payable in cash or Xeris Biopharma Holdings common stock (at Xeris Biopharma Holdings' election) upon achievement of the following triggering events: (i) the listing of at least one issued patent for KEVEYIS® in the U.S. Food & Drug Administration's Orange Book by the end of 2023 or at least $40 million in KEVEYIS® annual net sales in 2023 ($0.25 per ordinary share), (ii) achievement of at least $40 million in RECORLEV® annual net sales in 2023 ($0.25 per ordinary share), and (iii) achievement of at least $80 million in RECORLEV® annual net sales in 2024 ($0.50 per ordinary share). The minimum payment on the CVR per Strongbridge ordinary share is zero and the maximum payment is $1.00 in cash or Xeris Biopharma Holdings common stock, at Xeris Biopharma Holdings' election.

Upon close of the transaction, current Xeris shareholders are expected to own approximately 60% of the combined company, while current Strongbridge shareholders are expected to own approximately 40%.

"This is a very compelling transaction that will create a scalable and diversified biopharmaceutical company increasingly oriented toward more specialty and rare disease products, positioning us for long-term product development and commercial success," said Paul R. Edick, Chairman and Chief Executive Officer of Xeris. "Strongbridge's attractive rare disease portfolio and capabilities are highly complementary with Xeris. Building on the continuing prescription growth of Gvoke® with an enhanced and diversified growth profile, expanded and scalable salesforce, and expected cost-synergies, the combined company will be well positioned to deliver compelling long-term value to shareholders. We look forward to welcoming the Strongbridge team to Xeris and leveraging our differentiated portfolios and technologies to help the patients we serve improve their quality of life."

"We are excited to combine with Xeris to drive the next phase of our growth," said John H. Johnson, Chief Executive Officer of Strongbridge. "Strongbridge has made significant progress advancing its portfolio of therapies for rare endocrine and rare neuromuscular diseases with focus, commitment and passion for the patients and physicians that we serve. This includes delivering strong revenue growth for KEVEYIS® (dichlorphenamide), our first commercial, rare neuromuscular product, and the successful development of RECORLEV® (levoketoconazole), which is under review for approval by the FDA with expected commercialization in the first quarter of 2022 pending FDA approval. Through this combination with Xeris, we will gain additional scale and financial resources to better meet the unmet needs of those we serve. Our combined pipeline, drug development talent and commercial infrastructure will enable us to accelerate product launches and drive further growth. We look forward to working closely with the Xeris team to unlock the potential value of our combined assets, while providing our shareholders with the opportunity to participate in the success of the combined company."

**Strategic Rationale and Financial Benefits of the Transaction**

The combination of Xeris and Strongbridge is expected to deliver compelling strategic and financial benefits including:

- **Diversified and Increased Revenue Growth.** The combined company is expected to have a stronger revenue base with two rapidly growing commercial assets in Gvoke® and KEVEYIS®, and a near-term product launch in RECORLEV®. Gvoke® sells in a multi-billion dollar addressable market, as will RECORLEV®, if approved. With approval of RECORLEV® by the FDA, Xeris' experienced, endocrinology-focused commercial infrastructure is expected to enable a rapid product launch for RECORLEV® into the endocrinology community. With Gvoke®, KEVEYIS® and RECORLEV®, the combined company will boast multiple, highly differentiated, growing, commercial assets that could have significant combined revenue potential, supported by a larger and more efficient commercial organization.

- **Significant Potential Synergies.** The combined company is expected to generate approximately $50 million in pre-tax synergies by the end of 2022 resulting from immediate savings, including redundant general, administrative and other public company costs, and from the avoidance of future costs, most notably within the commercial and medical affairs functions. Shareholders of the combined company are expected to benefit from significant cost avoidance and the potential for more rapid and achievable near-term growth by utilizing Xeris' existing commercial infrastructure to launch RECORLEV® soon after product approval. Xeris' management and the independent Xeris directors are committed to retaining and incentivizing the most talented individuals in their respective functions between the two companies to ensure continuity and ongoing success.

- **Specialized Commercial Platform.** The combined company will have a robust rare disease and endocrinology-focused commercial infrastructure, primed to bring

the benefits of the company's products to a wider range of patients with unmet needs. At closing, the organization will have approximately 110 field sales representatives, as well as 50 inside sales and support employees, and a fully operational patient and provider support team, enabling a rapid potential product launch for RECORLEV® in the first quarter of 2022, as well as enhanced sales across the entire portfolio.

- **Expanded Development Pipeline.** In addition to RECORLEV®, the combined company will have a robust pipeline of development programs to extend the current marketed products into important new indications and uses and bring new products forward using its formulation technology platforms, supporting long-term product development and commercial success.

- **Strengthened Strategic Profile.** This transaction will enable the combined company to have a scalable infrastructure for continued development of specialist oriented and rare disease products from its proprietary XeriSol™ and XeriJect™ formulation technologies, as well as consolidation of commercial- and late development-stage products and companies focused on endocrinology and rare diseases.

- **Improved Access to Capital Markets.** With enhanced scale, multiple revenue generating commercial assets and a high potential value near-term development pipeline, the combined company is expected to have a more attractive profile to investors and to benefit from greater access to the debt and equity markets at a lower cost of capital.

**Additional Information**

Upon close of the transaction, the businesses of Xeris and Strongbridge will be combined under Xeris Biopharma Holdings, which will be incorporated in Delaware and will continue to have its principal executive offices in Chicago, IL. On close, Xeris shareholders will exchange each share of Xeris common stock they own for 1 share of Xeris Biopharma Holdings common stock.

Xeris Chairman and CEO, Paul Edick, will act as Chairman and Chief Executive Officer of Xeris Biopharma Holdings. The Xeris Biopharma Holdings board will comprise the other existing Xeris directors, together with John Johnson and Garheng Kong, M.D., PhD, MBA who will join the combined company's board as new independent directors. A director in common to both companies, Jeffrey W. Sherman, M.D., will continue to serve on the Xeris Biopharma Holdings board following the transaction.

Xeris Biopharma Holdings' shares of common stock are expected to trade on the Nasdaq Global Select Market (Nasdaq) under the ticker XERS.

The transaction is expected to close early in the fourth quarter of 2021, subject to customary closing conditions and approval by Xeris and Strongbridge shareholders.

In addition, certain Strongbridge directors, executive officers, CAM Capital and HealthCap VI, L.P., representing approximately 17% of Strongbridge's outstanding ordinary shares, have entered into irrevocable undertakings to vote in favor of the transaction.

SVB Leerink is acting as financial advisor to Xeris, and Goodwin Procter LLP and A&L Goodbody LLP are serving as legal counsel. MTS Health Partners, LP is acting as financial advisor to Strongbridge, and Skadden, Arps, Slate, Meagher & Flom, LLP and Arthur Cox LLP are serving as legal counsel.

**Conference Call Details**

Xeris and Strongbridge will host a conference call today at 8:30 a.m. Eastern Time to discuss the transaction. The conference call can be accessed by dialing (833) 979-2872 (U.S. / Canada) or (236) 714-2975 (International) and giving the passcode 6359699.

A live webcast of the conference call and associated presentation materials will be available on the investor relations sections of Xeris' and Strongbridge's websites at https://xerispharma.com/investors and https://investors.strongbridgebio.com, and a joint transaction website at www.XerisStrongbridge.com.

**About Xeris Pharmaceuticals, Inc.**

Xeris (Nasdaq: XERS) is a pharmaceutical company delivering innovative solutions to simplify the experience of administering important therapies that people rely on every day around the world.

With a novel technology platform that enables ready-to-use, room-temperature stable formulations of injectable and infusible therapies, the company is advancing a portfolio of solutions in various therapeutic categories, including its first commercial product, Gvoke® in the U.S. Its proprietary XeriSol™ and XeriJect™ formulation technologies have the potential to offer distinct advantages over conventional product formulations, including eliminating the need for reconstitution, enabling long-term, room-temperature stability, significantly reducing injection volume, and eliminating the requirement for intravenous (IV) infusion. With Xeris' technology, new product formulations are designed to be easier to use by patients, caregivers, and health practitioners and help reduce costs for payers and the healthcare system.

Xeris is headquartered in Chicago, IL. For more information, visit www.xerispharma.com, or follow us on Twitter, LinkedIn or Instagram.

**About Strongbridge Biopharma**

Strongbridge Biopharma is a global commercial-stage biopharmaceutical company focused on the development and commercialization of therapies for rare diseases with significant unmet needs. Strongbridge's rare endocrine franchise includes RECORLEV® (levoketoconazole), an adrenal steroidogenesis inhibitor with a New Drug Application that is currently under review by the FDA for the treatment of endogenous Cushing's syndrome, and veldoreotide extended release, a pre-clinical

next-generation somatostatin analog being investigated for the treatment of acromegaly and potential additional applications in other conditions amenable to somatostatin receptor activation. Both RECORLEV and veldoreotide have received orphan drug designation from the FDA and the European Medicines Agency. The company's rare neuromuscular franchise includes KEVEYIS® (dichlorphenamide), the first and only FDA-approved treatment for hyperkalemic, hypokalemic, and related variants of primary periodic paralysis. KEVEYIS has orphan drug exclusivity in the United States.

The announcement issued jointly by Xeris and Strongbridge under Rule 2.5 of the Irish Takeover Rules on May 24, 2021 (the "**Rule 2.5 Announcement**") is available on Xeris' website at www.xerispharma.com and on Strongbridge's website at www.strongbridgebio.com.

Appendix I to the Rule 2.5 Announcement contains further details of the sources of information and bases of calculations set out in this communication. Appendix II to the Rule 2.5 Announcement contains definitions of certain expressions used in this communication.

**No Offer or Solicitation**

This communication is not intended to and does not constitute an offer to sell or the solicitation of an offer to subscribe for or buy or an invitation to purchase or subscribe for any securities or the solicitation of any vote or approval in any jurisdiction pursuant to the proposed transaction, the merger or otherwise, nor shall there be any sale, issuance or transfer of securities in any jurisdiction in contravention of applicable law. No offer of securities shall be made in the United States absent registration under the Securities Act or pursuant to an exemption from, or in a transaction not subject to, such registration requirements. The proposed transaction will be made solely by means of the Scheme Document (or, if applicable, the Takeover Offer Document), which will contain the full terms and conditions of the proposed transaction, including details of how Strongbridge shareholders may vote in respect of the proposed transaction.

**IMPORTANT ADDITIONAL INFORMATION WILL BE FILED WITH THE SEC**

Xeris, Xeris Biopharma Holdings and Strongbridge will prepare and Xeris Biopharma Holdings will file with the SEC a Registration Statement on Form S-4 that will include a joint proxy statement of Strongbridge and Xeris and that also will constitute a prospectus with respect to the Xeris Biopharma Holdings Shares to be issued pursuant to the proposed transaction. The joint proxy statement will also contain the Scheme Document and further information relating to the implementation of the proposed transaction, the full terms and conditions of the scheme, notices of the Xeris shareholder meeting and the Strongbridge shareholder meetings and information on the Xeris Biopharma Holdings shares. Xeris and Strongbridge may also file other documents with the SEC regarding the proposed transaction. This communication is not a substitute for the joint proxy statement or

any other document which Xeris, Xeris Biopharma Holdings or Strongbridge may file with the SEC.

The joint proxy statement, if and when filed, as well as Xeris' and Strongbridge's other public filings with the SEC, may be obtained without charge at the SEC's website at www.sec.gov and, in the case of Xeris' filings, at Xeris' website at www.Xerispharma.com, and in the case of Strongbridge's filings, at Strongbridge's website at www.Strongbridgebio.com.

INVESTORS, XERIS SHAREHOLDERS AND STRONGBRIDGE SHAREHOLDERS ARE URGED TO READ THE JOINT PROXY STATEMENT AND ANY OTHER RELEVANT DOCUMENTS THAT ARE FILED OR WILL BE FILED WITH THE SEC, AS WELL AS ANY AMENDMENTS OR SUPPLEMENTS TO THESE DOCUMENTS, CAREFULLY AND IN THEIR ENTIRETY BECAUSE THEY CONTAIN OR WILL CONTAIN IMPORTANT INFORMATION ABOUT THE ACQUISITION AND RELATED MATTERS.

Any vote in respect of the resolutions to be proposed at the Strongbridge shareholder meetings to approve the proposed transaction, the scheme or related matters, or any decision in respect of, or other response to, the proposed transaction, should be made only on the basis of the information contained in the joint proxy statement (including the Scheme Document). Similarly, any decision in respect of the resolutions to be proposed at the Xeris shareholder meeting or any decision in respect of, or other response to, the proposed transaction, should be made only on the basis of the information contained in the joint proxy statement.

**PARTICIPANTS IN THE SOLICITATION**

Xeris, Xeris Biopharma Holdings, Strongbridge and their respective directors and executive officers and employees may be deemed to be participants in the solicitation of proxies from their respective shareholders in connection with the proposed transaction. Information regarding the persons who may, under the rules of the SEC, be deemed to be participants in the solicitation of shareholders in connection with the proposed transaction, including a description of their direct or indirect interests in the proposed transaction, which may be different from those of Xeris shareholders or Strongbridge shareholders generally, by security holdings or otherwise, will be set forth in the joint proxy statement (which will contain the Scheme Document) and any other relevant documents that are filed or will be filed with the SEC relating to the proposed transaction. Information about Xeris' directors and executive officers is contained in Xeris' Annual Report on Form 10-K for the year ended December 31, 2020, filed with the SEC on March 9, 2021, and its Proxy Statement on Schedule 14A, dated and filed with the SEC on April 29, 2021. Information regarding Strongbridge's directors and executive officers is contained in Strongbridge's Annual Report on Form 10-K for the year ended December 31, 2020, filed with the SEC on March 3, 2021, and its Proxy Statement on Schedule 14A, dated and filed with the SEC on April 14, 2021.

**II.      The Registration Statement Omits Material Information**

22.      On July 28, 2021, Defendants filed a materially incomplete and misleading Registration Statement with the SEC.  The Individual Defendants had a duty to carefully review the Registration Statement before it was filed with the SEC and disseminated to Strongbridge's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for Strongbridge's shareholders to make an informed decision in connection with the Proposed Transaction.

A.      <u>The Misleadingly Incomplete Financial Projections</u>

23.      The Registration Statement omits material information regarding the financial projections for Strongbridge and Xeris and relied upon by MTS in its analyses.  The Registration Statement provides values for certain non-GAAP financial metrics, but fails to provide line items used to calculate these metrics for either Strongbridge or Xeris.  The Registration Statement provides that the Strongbridge April 8 Xeris Projections (defined in Registration Statement at 85) were developed based on an equity report "produced by an independent investment bank in March 2021," but the Registration Statement does not identify the investment bank.  Moreover, with respect to Strongbridge, the projections do not provide the metrics underlying internal assumptions prepared by Strongbridge management about the probability of technical success and probability of regulatory approvals, launch timing, epidemiology, pricing, sales ramp, market share, market exclusivity, research and development expenses, sales and marketing expenses, general and administrative expenses, effective tax rate and utilization of net operating losses and other relevant factors related to Strongbridge's long-term operation plan.

24.      The projections served as a primary reason for the Board to approve the Proposed

Transaction and for MTS to find the Transaction Consideration "fair" to Strongbridge shareholders. The information is plainly material and speaks squarely to the question that the Company's shareholders must answer in determining whether to vote in favor of the Proposed Transaction: Is the Transaction Consideration more or less valuable than a full stake in the standalone company? Without the material information regarding the projections, Defendants present the Company's shareholders with only a fraction of the equation, rendering them unable to answer this question and assess the fairness of the Proposed Transaction. Thus, the omitted information is plainly material to shareholders and must be disclosed.

25.     With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the valuation information relied upon by MTS and the Board but have failed to disclose the material information regarding the projections. These omissions render the summary of MTS' value and financial picture in the Registration Statement misleadingly incomplete.

B.      The Misleadingly Incomplete Summary of MTS' Valuation Analyses

26.     The Registration Statement describes MTS' fairness opinion and the various valuation analyses performed in support of its opinion.  Defendants concede the materiality of this information by including the fairness opinion and valuation analyses among the factors considered in recommending the Proposed Transaction. Registration Statement at 73.  However, the summary of MTS' fairness opinion and analyses provided in the Registration Statement fails to include key inputs and assumptions underlying the analyses. Without this information, as described below, Strongbridge shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on the fairness opinions in determining whether to vote in

favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Strongbridge's shareholders.

27.     In summarizing MTS' *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) assumptions underlying revenue achievements of 50% to 150% as provided by Strongbridge management, and (ii) inputs and assumptions underlying the discount rate ranges utilized by MTS.

28.     In summarizing MTS' *Public Trading Comparable Companies Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed in the analysis.

29.     The summary of MTS' *Precedent M&A Transaction Analysis* is materially misleading because it fails to disclose any of the inputs or assumptions for the precedent transactions.

30.     With respect to MTS' summary of valuation analyses of Xeris, the Registration Statement is also misleading.

31.     In summarizing MTS' *Discounted Cash Flow Analysis* of Xeris, the Registration Statement does not disclose the inputs and assumptions underlying the discount rates.

32.     The summary of MTS' *Public Trading Comparable Companies Analysis* of Xeris fails to disclose any of the multiples or metrics for the selected comparable companies.

33.     These material omissions render the summary of MTS' valuation analyses included in the Registration Statement misleadingly incomplete.

34.     Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to make an informed decision regarding the Proposed Transaction, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

<u>COUNT I</u>
**Against All Defendants for Violations of Section 14(a) of the Exchange Act**

35.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

37.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

38.     The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

39.     Defendants have issued the Registration Statement with the intention of soliciting Strongbridge's common shareholders' support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things: (i) financial projections for Strongbridge and Xeris, and (ii) MTS' valuation analyses performed in support of its fairness opinion.

15

40.     In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated in or omitted from the Registration Statement, but failed to obtain and disclose such information to Strongbridge's shareholders, though they could have done so without extraordinary effort.

41.     The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading.  As officers or directors of the Company and signatories to the Proxy, the Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve the Proposed Transaction and solicit shareholder consent; indeed, the Registration Statement states that MTS reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by MTS as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Transaction Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be misleadingly incomplete.  Indeed, the Individual Defendants were required to review the financial analyses in connection with their receipt of the fairness opinion, question MTS as to its derivation

of fairness, and be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

42.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in: (i) their decision to omit material information from the Registration Statement; or (ii) their failure to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as Strongbridge's officers and directors.

43.     Strongbridge is also deemed negligent as a result of the Individual Defendants' negligence in preparing and/or reviewing the Registration Statement.

44.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to make an informed decision on the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the special meeting of Strongbridge's shareholders.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## <u>COUNT II</u>
**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

45.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46.     The Individual Defendants acted as controlling persons of Strongbridge within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions

as officers or directors of Strongbridge, and participation in and/or awareness of Strongbridge's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Strongbridge, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Strongbridge, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Board to approve the Proposed Transaction.

49.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Transaction Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51.     As set forth above, the Individual Defendants had the ability to exercise control

over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from consummating the Proposed Transaction, until Defendants disclose the material information discussed above which has been omitted from the Registration Statement;

B.     Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 12, 2021

**MONTEVERDE & ASSOCIATES PC**

*/s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*